Farah Tabibkhoei (SBN 223511)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8219
Email: FTabibkhoei@reedsmith.com

James C. Pistorino
PARRISH LAW OFFICES
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile: (412) 561-6253
Email: james@dparrishlaw.com

Attorneys for Plaintiff Frederic Maupin

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERIC MAUPIN, an individual,<br><br>Plaintiff,<br>v.<br>ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

1.  Plaintiff Dr. Frederic Maupin ("Plaintiff" or "Dr. Maupin"), brings this action against Defendant Alex Azar, in his official capacity as Secretary of the United States Department of Health and Human Services, to obtain injunctive and other relief

- 1 -

as set forth herein, for violation of federal law.  Dr. Maupin makes the following allegations based on the investigation of counsel, on information and belief, and on personal knowledge.

## I. JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g) and 1395ff.  Dr. Maupin is filing suit after a final decision of the Medicare Appeals Council - aka the Departmental Appeals Board - (acting on behalf of the Secretary) denying coverage of his Medicare claim (and, therefore, has exhausted his administrative remedies), the amount-in-controversy is more than $1,650 (42 U.S.C. §§ 1395ff(b)(1)(E)(i) and 1395ff(b)(1)(E)(iii)), and this suit was filed within 60 days of the Secretary's final decision.

3. Venue is proper in this district pursuant to 42 U.S.C. § 1395ff(b)(2)(C)(iii) because this action is being brought in the district where Dr. Maupin resides.

## II. PARTIES

4. Plaintiff, Dr. Maupin, is an individual and a resident of the State of California, who currently resides in Glendale, California.  Dr. Maupin is eligible for Medicare on the basis of age (or disability) as previously determined by the Secretary of the United States Department of Health and Human Services.

5. Defendant Alex Azar is sued in his official capacity as the Secretary of the United States Department of Health and Human Services.

## III. FACTUAL BACKGROUND

**A. Dr. Maupin/Glioblastoma/TTFT**

6. Dr. Maupin is a 73-year-old, father of three, and grandfather of five, who currently lives in Glendale, California with his wife (Teresita).  Dr. Maupin is a veteran of the Peace Corps, serving three years in Tunisia/Northern Africa.  A highly-educated man, Dr. Maupin earned two Master's degrees before receiving his PhD from the University of Southern California.  Dr. Maupin is currently employed as the managing director of a management consulting firm that advises universities and colleges on a

1  variety of issues.  In his free time, Dr. Maupin enjoys spending time with his family, swimming, hiking, and bird watching (ornithology).

7. Tragically, Dr. Maupin has been diagnosed with an unusually deadly type of brain tumor called glioblastoma multiforme (GBM).  Without treatment, survival is typically 3 months.  Even with traditional forms of treatment, the survival rate at 2 years after treatment is approximately 31%, while at five years, only approximately 5% of patients are living.

8. As part of his treatment, Dr. Maupin was prescribed a device that treats his GBM using alternating electric fields.  This is known as tumor treatment field therapy (TTFT).  The alternating electric fields interfere with tumor cell replication and have been shown to dramatically increase the period during which the GBM does not progress, as well as overall survival rates.  Indeed, TTFT has proven so effective that, in late 2014, a randomized clinical trial of TTFT was suspended because it would have been unethical to withhold TTFT treatment from the control group.[1]

---

[1] In much scientific research, study participants are randomly assigned to "control" and "test" groups.  The "control" group does not receive the treatment being tested.  By contrast, the "test" group does.  Proceeding in this way facilitates the determination of which effects, if any, are the result of the tested treatment as opposed to normal variation among the study participants.  During the course of a study, interim results are frequently measured to determine whether the study is proceeding as planned and whether any changes are needed.  When the interim results indicate that the tested treatment has a significant effect on health or safety, either negative or positive, ethical guidelines dictate that the study should be halted.  Thus, if the interim results indicate that the tested treatment was significantly more likely to result in death than the control group, the study would be halted and the treatment no longer given to the "test" group.  Likewise, if the interim result indicated that the tested treatment was literally lifesaving, the study would be halted and the treatment would be made available to the "control" group.  In those circumstances, withholding the treatment from the "control" group would be unethical.

9. In ground-breaking papers published in the Journal of the American Medical Association (JAMA)[2] in 2015 and 2017, TTFT was shown to increase the 2-year survival rate by more than 38% and to nearly triple the five-year survival rate.[3]

10. As reported, TTFT was the first significant advance in treating GBM in more than a decade. TTFT has become the standard of care for treating GBM and essentially all private insurers cover TTFT. TTFT saves and/or extends GBM patients' lives, in some instances, by years. Between January 2016 and December 2018, at least 93 scientific papers were published demonstrating the effectiveness of TTFT. It is given a level one recommendation in the National Comprehensive Cancer Network (NCCN) guidelines, *i.e.*, there is consensus, among the experts, based on a high level of evidence, that TTFT is a recommended intervention.

11. Dr. Maupin was prescribed a TTFT device ("Optune") manufactured by Novocure, Inc. The Optune device has been approved by the FDA for treating both newly diagnosed and recurrent GBM. Dr. Maupin pays a premium each month to enjoy the benefits of a Medicare Advantage Plan (described below) offered by Kaiser Foundation Health Plan ("Kaiser").

**B. How Medicare Works**

12. The Medicare program is divided into four "Parts." Relevant here are Parts "B" and "C."

**C. Original Medicare**

13. Medicare Part B is often referred to as "Original Medicare." Original Medicare covers, *inter alia*, medications, treatments, medical supplies, and durable

---

[2] The Journal of the American Medical Association (JAMA) is widely regarded as the most prestigious medical journal in the United States and, at least, one of the most prestigious in the world.

[3] *See* Stupp, et al., "MAINTENANCE THERAPY WITH TUMOR-TREATING FIELDS PLUS TEMOZOLOMIDE VS. TEMOZOLOMIDE ALONE FOR GLIOBLASTOMA: A RANDOMIZED CLINICAL TRIAL", JAMA, Vol. 314, No. 23, pgs. 2535-43 (December 15, 2015); Stupp, et al., "EFFECT OF TUMOR TREATING FIELDS PLUS MAINTENANCE TEMOZOLOMIDE VS. MAINTENANCE TEMOZOLOMIDE ALONE ON SURVIVAL IN PATIENTS WITH GLIOBLASTOMA", JAMA, Vol. 318, No. 23, pgs. 2306-2316 (December 19, 2017).

medical equipment. The items/services paid for, or not paid for, under Original Medicare are described in the statutes and in various regulations and policies developed by the Secretary. Most relevant here are policies called Local Coverage Determinations (LCD). Medicare has divided the country into various regions administered by contractors working for Medicare. An LCD is a policy developed by a contractor in a region and applicable to that region, which indicates whether an item or service will be covered or not.

14. In general, the Original Medicare claim process is a five-step process that may result in district court review. *See* 42 U.S.C. § 1395ff. The process starts when a Medicare beneficiary using Original Medicare submits a claim for coverage. That claim is reviewed by a Medicare contractor for an initial determination. In making the initial determination, the Medicare contractor is bound to follow Medicare policies, including any LCD applicable to the region.

15. If the beneficiary is dissatisfied with the initial determination, they may "appeal" by requesting a "redetermination." In making the redetermination decision, the Medicare contractor is, again, bound by Medicare policies, including any LCD applicable to the region.

16. If a Medicare beneficiary is dissatisfied with the "redetermination" decision, they may "appeal" by seeking "reconsideration." Reconsideration is process carried out by a Qualified Independent Contractor (QIC) – an ostensibly independent third party. Crucially, the QIC is not bound by any LCD applicable to the region. *See* 42 U.S.C. § 1395ff(c)(3)(B)(ii)(III) ("If the Secretary has made a local coverage determination, such determination shall not be binding on the qualified independent contractor …").

17. If a Medicare beneficiary is dissatisfied with the "reconsideration" decision, they may "appeal" by seeking a hearing before an Administrative Law Judge (ALJ). Again, crucially, the ALJs are not bound by LCDs. *See* 42 C.F.R. § 405.1062(a) and (b). Instead, ALJs must give substantial deference to them but have discretion to

disregard applicable LCDs based on the facts of a particular case. ALJs may depart from applicable LCDs for many reasons (*e.g.*, LCD has not kept up with developments in technology, the patient has a particular need for an item/service that would otherwise be excluded), with the only requirement for doing so being that the ALJ explain his reasoning. In declining to apply an LCD, an ALJ is not determining that an LCD is invalid. *See* 42 C.F.R. § 405.1062(c). Instead, the ALJ is merely declining to apply the LCD in a particular case.

18. Decisions of ALJs may be "appealed" to the Medicare Appeals Council (aka the Departmental Appeals Board) ("MAC/DAB") in one of two ways: 1) an appeal by the Medicare beneficiary; or 2) so-called "own motion review", where the Secretary essentially appeals the decision of his own ALJ. In any event, like ALJs, the MAC/DAB is not bound by an LCD and has discretion to disregard applicable LCDs. *See* 42 C.F.R. § 405.1062(a) and (b). Thus, even if an ALJ applied an applicable LCD and excluded coverage, the MAC/DAB has discretion to depart from the LCD and arrive at a different conclusion. Again, in declining to apply an LCD, the MAC/DAB is not determining that an LCD is invalid. *See* 42 C.F.R. § 405.1062(c). Instead, the MAC/DAB is merely declining to apply the LCD in a particular case.

19. In light of the fact that both ALJs and the MAC/DAB are not bound by LCDs, what is and is not covered by Original Medicare is actually determined by decisions at those levels, regardless of what applicable LCDs may say. This individualized determination of what may be covered is one of the things offered by Original Medicare under the statutes enacted by Congress.

20. If a Medicare beneficiary is dissatisfied with the decision of the MAC/DAB, then, subject to certain requirements, the beneficiary may file suit in district court to seek judicial review.

**D. Medicare Part "C" – Medicare Advantage Plans**

21. Medicare Part "C" is a program in which private parties (*e.g.*, Kaiser, Blue Cross) offer what are called Medicare Advantage Plans. *See* 42 U.S.C. § 1395w-21-28.

By statute, a Medicare Advantage Plan (the "Plan") must offer everything Original Medicare does but may also offer additional services (*e.g.*, dental care, eye glasses). *See* 42 U.S.C. § 1395w-22; 42 C.F.R. § 422.101(a) ("Provide coverage of … all services that are covered by Part A and Part B of Medicare[.]").  Private parties offer Medicare Advantage Plans to the public for a premium that allows customers access to everything offered by Original Medicare as well as the additional services offered by the Plan.

22. When claims for coverage are submitted by Medicare Advantage Plan customers, the Plan determines whether the claim falls within its supplemental services. If not, then the claim is processed as an Original Medicare claim using the claim/appeal procedures applicable to Original Medicare.  *See* 42 U.S.C. § 1395w-22(g)(5) ("An enrollee … is entitled … to a hearing before the Secretary to the same extent …"). Thus, these claims have initial determinations, redeterminations, reconsiderations, ALJ hearings, then MAC/DAB decisions, and, again, may end up in district court review.

23. In the present case, Dr. Maupin purchased a Medicare Advantage Plan from Kaiser.  Consistent with the statute, the Plan brochure (aka "Evidence of Coverage") states that Kaiser covers everything covered by Original Medicare.

**E.  LCD L34823/TTFT**

24. In November 2014, a clinical trial of TTFT was suspended because it would have been unethical to withhold TTFT treatment from the control group.

25. On October 1, 2015, LCD L34823 entitled "Tumor Treatment Field Therapy (TTFT)″ became final.  That LCD indicated that TTFT would not be covered because it was deemed not medically reasonable and necessary.

26. Four days later, on October 5, 2015, the FDA approved the Optune device to treat newly diagnosed GBM.

27. Three months later, on December 15, 2015, the first of the ground-breaking papers appeared in JAMA.

28. In January 2016, TTFT received a Category 2A designation by the NCCN Guidelines ("… uniform NCCN consensus that the intervention is appropriate").

29. On December 19, 2017, the second of the ground-breaking papers appeared in JAMA.

30. In March 2018, TTFT received a Category 1 designation by the NCCN Guidelines ("Based upon high-level evidence, there is uniform NCCN consensus that the intervention is appropriate").

31. The NCCN Guidelines "are the recognized standard for clinical policy in cancer care and are the most detailed and most frequently updated clinical practice guidelines available in any area of medicine." The NCCN Guidelines are acknowledged by the Secretary to reflect the standard of care. *See* https://www.nccn.org/patients/clinical/default.aspx

32. Between November 2014, and the filing of this suit, LCD L34823 was not updated to reflect developments with respect to TTFT.[4]

33. The peer reviewed literature reflects that TTFT is medically reasonable and necessary to treat GBM.

34. The consensus of the experts in the medical community is that TTFT is medically reasonable and necessary to treat GBM.

35. TTFT is the standard of care for treating GBM and is generally accepted by the medical community for treating GBM.

**F.  Proceedings in this Case**

36. As described above, Dr. Maupin purchased a Medicare Advantage Plan offered by Kaiser. That Plan disclosed that it covered everything covered by Original Medicare. Further, of course, the Plan was required to cover everything covered by Original Medicare under the statutes enacted by Congress.

37. Dr. Maupin was diagnosed with a GBM in June 2018.

---

[4] However, third parties have started a proceeding to revoke LCD L34823 at the Department. That proceeding is on-going and a decision is expected imminently.

38. After surgery and chemotherapy, consistent with the standard of care, Dr. Maupin was prescribed the Optune TTFT device as part of his treatment on September 10, 2018.

39. Dr. Maupin submitted a claim for coverage for the Optune device.

40. Because Dr. Maupin's claim fell under the Original Medicare portion of his Medicare Advantage Plan, Dr. Maupin's claim was processed accordingly.

41. Citing LCD L38423 that excludes TTFT coverage, Dr. Maupin's claim was initially denied. Dr. Maupin then sought redetermination and, again, relying on LCD L38423, his claim was denied.

42. Dr. Maupin then sought reconsideration by the QIC (here, MAXIMUS) and, again, relying on LCD L38423, his claim was denied.

43. Dr. Maupin then sought ALJ review and the case was assigned to ALJ Troy Smith and ALJ Appeal No. 1-8064683811. Judge Smith reviewed the medical record, the LCD, and the subsequent scientific developments and issued a decision on February 1, 2019. Exercising his discretion under the statutes and regulations, Judge Smith declined to apply LCD L38423. In explaining his decision, Judge Smith noted that LCD L38423 is limited to recurrent GBM, not newly diagnosed GBM such as that suffered by Dr. Maupin. Judge Smith further concluded that, even putting that aside, LCD L38423 was outdated and does not reflect the consensus of the medical community. Judge Smith found that the Optune TTFT device was medically reasonable and necessary for Dr. Maupin and ordered Kaiser to cover it.

44. Subsequently, Kaiser appealed to the MAC. Kaiser argued that: 1) Kaiser was bound to follow the LCD on initial determination and redetermination; 2) another ALJ had chosen to follow the LCD in a different case;[5] and 3) that granting coverage in Dr. Maupin's case would lead to a lack of uniformity.

---

[5] This is a curious argument given the Secretary's long-standing position that prior decisions by ALJs and the MAC are non-precedential unless specifically so designated.

45. On May 2, 2019, the MAC/DAB issued a decision reversing Judge Smith. The MAC/DAB concluded that, because Kaiser was bound by the LCD at the first two levels of consideration, contrary to 42 C.F.R. § 405.1062(a) and (b), both the ALJ and the MAC/DAB were also bound. This results in the anomalous situation where a "Medicare *Advantage* Plan" that is supposed to offer everything that Original Medicare does, *and more*, by statute/regulation, actually has less coverage than Original Medicare.

46. As he had before Judge Smith, Dr. Maupin indicated that reasons to depart from the LCD *in his case* included the evolved standard of care, the consensus of experts, peer-reviewed literature, and acceptance in the medical community. The MAC/DAB characterized this as a request to rule on the validity of the LCD (rather than reasons to depart from it in this case) and refused to consider Dr. Maupin's argument.

47. Accordingly, the MAC/DAB reversed Judge Smith and denied coverage.

48. If Dr. Maupin had only Original Medicare, rather than a Medicare Advantage Plan, neither the ALJ nor the MAC/DAB would be bound by an LCD.

## IV. CAUSES OF ACTION

### COUNT I

(Contrary To Law)

49. Plaintiff hereby incorporates paragraphs 1-48 herein.

50. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions and issue an order finding that, under the statutes and the Secretary's own regulations, neither ALJs nor the MAC/DAB are bound by LCDs.

51. Further, based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as contrary to law, as arbitrary and capricious, an abuse of discretion, and unsupported by the evidence, and issue an order finding that TTFT is medically reasonable and necessary to treat Dr. Maupin's GBM and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT II

### Violation of 5 U.S.C. § 706(1)

(Unlawfully Withheld Or Unreasonably Delayed)

52. Paragraphs 1-51 are incorporated by reference as if fully set forth herein.

53. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as unlawfully withheld or unreasonably delayed and unsupported by the evidence, and issue an order finding that TTFT is covered for Dr. Maupin and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT III

### Violation of 5 U.S.C § 706(2)(A)

(Arbitrary And Capricious, Abuse Of Discretion, Not In Accordance With Law)

54. Paragraphs 1-53 are incorporated by reference as if fully set forth herein.

55. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with the law, and issue an order finding that TTFT is covered for Dr. Maupin and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT IV

### Violation of 5 U.S.C § 706(2)(C)

(Excess of Statutory Jurisdiction, Authority, or Limitations; Short of Statutory Right)

56. Paragraphs 1-55 are incorporated by reference as if fully set forth herein.

57. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as in excess of the Secretary's authority and limitations and short of Plaintiff's statutory rights and issue an order finding that TTFT is covered and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT V

## Violation of 5 U.S.C § 706(2)(D)

(Without Observance Of Procedure Required By Law)

58. Paragraphs 1-57 are incorporated by reference as if fully set forth herein.

59. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as done without observance of the procedure required by law and issue an order finding TTFT is covered for Dr. Maupin and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT VI

## Violation of 5 U.S.C § 706(2)(E)

(Not Supported By Substantial Evidence)

60. Paragraphs 1-59 are incorporated by reference as if fully set forth herein.

61. Based on the foregoing, Plaintiff asks the Court to reverse the Secretary's Decisions as not supported by substantial evidence and issue an order finding that TTFT is covered for Dr. Maupin and direct the Secretary to make appropriate payment for the claims that are the subject of this case.

## COUNT VII

## 28 U.S.C § 2201

(Declaratory Judgment)

62. Paragraphs 1-61 are incorporated by reference as if fully set forth herein.

63. An actual, present and justiciable case or controversy exists between Plaintiff and the Secretary as to whether TTFT meets Medicare coverage criteria under the statutes and regulations.

64. Plaintiff seeks a declaration from this Court that TTFT is medically reasonable and necessary to treat GBM and is covered pursuant to the statutes and regulations.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court:

A. Enter a judgment:

(1) Determining that neither ALJs nor the MAC/DAB are bound by LCDs when considering Part C cases;

(2) Determining that TTFT is medically reasonable and necessary and a covered benefit under the Medicare statutes and regulation; and

(3) Directing Defendant to provide coverage and payment for Mr. Maupin's TTFT claim;

B. Award attorney's fees and costs to Plaintiff as permitted by law; and

C. Provide such further and other relief this Court deems appropriate.

Dated:  June 28, 2019

Respectfully submitted,

REED SMITH LLP


 /s/*Farah Tabibkhoei*
Farah Tabibkhoei

and

James C. Pistorino
PARRISH LAW OFFICES
788 Washington Road
Pittsburgh, PA 15228
Telephone: (412) 561-6250
Facsimile: (412) 561-6253

*Attorneys for Plaintiff Frederic Maupin*