Farah Tabibkhoei (SBN 266312)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA  90071-1514
Telephone:  +1 213 457 8000
Facsimile:   +1 213 457 8219
Email:  FTabibkhoei@reedsmith.com

James C. Pistorino (SBN 226496)
PARRISH LAW OFFICES
224 Lexington Dr.
Menlo Park, CA  94025
Telephone: (412) 561-6250
Facsimile: (412) 561-6253
Email: james@dparrishlaw.com

Attorneys for Plaintiff Frederic Maupin

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERIC MAUPIN, an individual,<br><br>Plaintiff,<br>v.<br>ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Case No. 2:19-cv-05673-MWF-JPR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  November 18, 2019<br>Time: 10:00 a.m.<br>Place: First Street Courthouse<br>         350 West First Street,<br>         Courtroom 5A<br>         Los Angeles, California 90012 |

Pursuant to FED.R.CIV.P. 56(a), Plaintiff Dr. Frederic Maupin ("Plaintiff") files this motion for summary judgment of liability. Dr. Maupin, a Medicare beneficiary, has a brain tumor. He was diagnosed with glioblastoma multiforme, an aggressive form of brain cancer, in June 2018. Dr. Maupin submitted a claim for coverage of a life-saving device to treat his brain tumor. The device at issue (the Optune TTFT device) has been shown to increase the 2-year survival rate by 38% and nearly triple the 5-year survival rate. Even with the miracle of TTFT treatment, the five year survival rate for GBM patients is less than 15%. Instead of concentrating on his health and recovery, Dr. Maupin has been forced to spend his precious time dealing with this matter as the Secretary invents new ways of denying coverage and delaying resolution of this matter.

Under Original Medicare, when claims are denied, appealed and reach the administrative law judge level, the administrative law judge (ALJ) has discretion to order coverage. Dr. Maupin pays for a plan that offers services in addition to Original Medicare coverage (*i.e.*, a Medicare Advantage Plan[1]). Although a Medicare ALJ found the device met Medicare's coverage criteria and should be covered by his Medicare Advantage Plan, the Medicare Appeals Council ("Council") reversed the ALJ's ruling and asserted the ALJ had no discretion to order coverage of the device. The Council's decision is contrary to the relevant statutes and regulations, and the Council provided no legal basis for its ruling. There is no issue of fact and resolution of this matter turns solely on a question of law.[2]

Because the coverage denial in this case is without legal basis, it should be reversed. Further, because ALJ Smith exercised his discretion in granting coverage and there is no basis to conclude that he abused that discretion, the Secretary should be ordered to cover Dr. Maupin's claim.

---

[1] A Medicare Advantage Plan is a type of a "Medicare+Choice" Plan. *See, e.g.*, 42 C.F.R. §§ 422.2 and 422.4.

[2] This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 11, 2019.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## I. BACKGROUND

### A. Procedural History in This Case

This case was filed on June 28, 2019 by Dr. Maupin naming Alex Azar, in his official capacity as the Secretary of Health and Human Services, as the Defendant. Service was completed on July 12, 2019. *See* Doc. 13. Pursuant to FED.R.CIV.P. 12(a)(2), the Secretary was required to Answer 60 days later, *i.e.*, September 10, 2019. On September 10, 2019, the Secretary filed a *partial* Answer denying the allegations of the Complaint. Pursuant to 42 U.S.C. § 405(g):

> As part of the [Secretary's] answer the [Secretary] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.[3]

However, the Secretary failed to file a certified copy of the Record in this case. Indeed, in discussions with counsel, the Secretary refused to comply with his obligations in this regard. Instead, the Secretary accorded himself a unilateral extension for an unknown time period (but on the order of 60 days). In discussions, the Secretary stated his belief that his unilateral extension would be effective because of the time required to file a motion to compel the Secretary to comply with the statute. Ultimately, the Secretary filed a copy of the Record on October 8, 2019 (*see* Doc. # 17), nearly a month late.

This is part of an unfortunate pattern of sheer defiance of the statutes and regulations by the Secretary.

### B. Medicare Appeals Process for Part A, B, and C Claims

Medicare is divided into several "Parts."

---

[3] Pursuant to 42 U.S.C. §1395ff(b)(1)(A), the original reference in 405(g) to the "Commissioner" of Social Security" or "Social Security Administration" is replaced with "Secretary" or "Department of Health and Human Services."

### 1. Parts A and B Appeal Process

Relevant here are Parts A (42 U.S.C. §§ 1395c-1395i-5) and B (42 U.S.C. §§ 1395j-1395w-6). These are referred to as "Original Medicare" and provide coverage for hospital stays (Part A) and certain other medical services and supplies (Part B). One way Medicare indicates general policies regarding what is or is not covered by Medicare is through Local Coverage Determinations (LCDs).

Pursuant to 42 U.S.C. § 405(b), Original Medicare beneficiaries submit claims for coverage. Contractors to Medicare (Noridian and CGS) administer the Medicare program at the initial levels for the Secretary. The Medicare contractors (Noridian and CGS) develop LCDs for use in their respective areas of the country. Consideration of the initial claim for coverage is initially controlled by any applicable LCD. If the claim is not approved, there is a five-step process for appealing that denial. That starts with a redetermination by the contractor which is again controlled by any applicable LCD.

If the claim is still not approved, a reconsideration follows. Reconsideration is performed by a Qualified Independent Contractor (QIC). *See* 42 C.F.R. § 405.960. Although LCDs provide general guidance, the coverage indicated by an LCD may not be appropriate in particular cases. Accordingly, the QIC has discretion to decline to apply LCDs based on the facts of a particular case. This is detailed in 42 C.F.R. § 405.968(b)(2), which provides:

> QICs *are not bound by LCDs*, LMRPs, or CMS program guidance, such as program memoranda and manual instructions, but give substantial deference to these policies if they are applicable to a particular case. A QIC may decline to follow a policy, if the QIC determines, either at a party's request or at its own discretion, that the policy does not apply to the facts of the particular case.

(emphasis added).[4] Thus, although a Medicare contractor is bound by an LCD at the initial stages, the QIC is not. Even in the face of an applicable LCD barring coverage, the QIC may decide to grant coverage, depending on the facts of the case.[5]

If the claim is still not approved, the Medicare beneficiary can appeal to an ALJ. Like the QIC, ALJs have discretion to depart from LCDs. This is detailed in 42 C.F.R. § 405.1062(a), which provides:

> ALJs and attorney adjudicators and the Council *are not bound by LCDs*, LMRPs, or CMS program guidance, such as program memoranda and manual instructions, but will give substantial deference to these policies if they are applicable to a particular case.

(emphasis added).[6]

If the claim is still not approved, the beneficiary can appeal to the Council. Likewise, on so-called "own motion review", CMS can refer an ALJ decision it is dissatisfied with to the Council. Again, like the QIC and ALJs, the Council has discretion to depart from an LCD. *Id.* Further, Council review is limited to the issues raised in the request for review or referral. See 42. C.F.R. §§ 405.1112(c) and 405.1110(c)(1).

Thus, a beneficiary may lose all the way to the Council level and the Council may decide to not apply a pertinent LCD and grant coverage. Ultimately, what is and is not covered under Original Medicare is determined by the QIC, ALJ, and Council exercising their discretion in the face of applicable LCDs.

---

[4] *See also* 42 U.S.C. § 1395ff(c)(3)(B)(ii)(III).

[5] However, if the QIC does not apply an LCD, the QIC must explain the reason why the LCD was not followed. *See* 42 C.F.R. § 405.968(b)(3).

[6] If an ALJ or the Council chooses to grant coverage despite an LCD, they are required to explain their reasons for departing from the LCD. *See* 42 C.F.R. § 405.1062(b).

-4-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## 2. Part C Appeal Process

In addition to Parts A and B (*i.e.*, "Original Medicare"), Medicare also has Part C (42 U.S.C. § 1395w-21-29). Part C generally concerns what are called Medicare+Choice plans. These are plans offered by third parties under contract with Medicare. Under these plans, a beneficiary pays a monthly fee and obtains the coverage offered by Original Medicare, as well as additional coverage (often, dental and vision). *See* 42 U.S.C. § 1395w-22; 42 C.F.R. § 422.101(a) ("Provide coverage of … all services that are covered by Part A and Part B of Medicare[.]"). One type of Medicare+Choice plan is a "Medicare Advantage" plan.

Title 42 U.S.C. § 1395w-22(g)(5) provides in relevant part:

> An enrollee with a Medicare+Choice plan of a Medicare+Choice organization under this part who is dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled and at no greater charge than the enrollee believes the enrollee is required to pay *is entitled*, if the amount in controversy is $100 or more, *to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title*, and in any such hearing the Secretary shall make the organization a party.

(emphasis added). In plain language, Medicare beneficiaries enrolled in Medicare Advantage plans are entitled to hearings on their claims before the Secretary to "the same extent as" people enrolled in Original Medicare (*i.e.*, Parts A and B).

Processing of Part C claims for services available under Original Medicare follows the same process as Original Medicare claims, with slightly different terminology at the initial stages. Thus, a Medicare Advantage plan is first bound by any applicable LCD. *See* 42 C.F.R. § 422.101(b)(3). If a claim is denied, the beneficiary is entitled to "reconsideration" (42 C.F.R. § 422.578) by the Medicare Advantage plan itself - still bound by any applicable LCD. If the claim is still denied, the beneficiary is entitled to "reconsidered determination" by an "Independent Review

-5-

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Entity" (IRE) (42 C.F.R. § 422.592).  If the claim is still denied, identical to Original Medicare, the beneficiary can appeal to an ALJ and then later the Council.  *See* 42 C.F.R. §§ 422.600 and 422.608.

Generally speaking, there are not separate regulations for the conduct of the various steps of the appeal process for Part C claims.  Instead, the Secretary relies on the regulations that guide appeals of Original Medicare claims.  Subpart M of 42 C.F.R., entitled "Grievances, Organization Determinations and Appeals", constitutes §§ 422.560-634.  Therein, 42 C.F.R. § 422.562(d)(1) ("When other regulations apply") provides:

> Unless this subpart provides otherwise and subject to paragraph (d)(2) of this section, the regulations in part 405 [*i.e.*, those covering Original Medicare] of this chapter (concerning the administrative review and hearing processes and representation of parties under titles II and XVIII of the Act) apply under this subpart to the extent they are appropriate.

Accordingly, Part C appeals are governed by the regulations applicable to Original Medicare except in circumstances not relevant here.  Indeed, with regard to appeals to the Council from an ALJ, 42 C.F.R. § 422.608 even more specifically provides:

> The regulations under part 405 of this chapter regarding Council review apply to matters addressed by this subpart to the extent that they are appropriate, except as provided in § 422.562(d)(2).

Section 422.562(d)(2) is not relevant to the issues in this case.

C. **Procedure Below**

Dr. Maupin is a member of a Medicare Advantage plan.  As set forth in the Complaint, tragically, Dr. Maupin has been diagnosed with a particularly lethal form of brain cancer referred to as glioblastoma multiforme (GBM).  After brain surgery to remove as much of the cancer as possible and associated chemotherapy and radiation,

-6-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Dr. Maupin was prescribed "tumor treatment field therapy" (TTFT) using the Optune device to minimize progression of the cancer.

Dr. Maupin's claim for coverage was initially denied, denied again on reconsideration, and denied again on reconsidered determination by the Independent Review Entity. In particular, Dr. Maupin's claim was denied on the grounds that LCD L34823 indicated that coverage was not available for TTFT. On appeal, ALJ Troy Smith issued a decision on February 1, 2019, requiring Kaiser to approve Dr. Maupin's request for TTFT coverage. *See* Doc. 20 [Declaration of Farah Tabibkhoei ("Tabibkhoei Decl.")] at Exh. 1 at 076-081. Judge Smith declined to apply the LCD because the LCD had not kept up with the scientific developments related to TTFT and the Optune device, and TTFT treatment was further medically reasonable and necessary for Dr. Maupin.[7] *Id.* at 080-081. In ordering coverage, ALJ Smith exercised his discretion to depart from LCD L34823. *Id.* For authority to depart from the LCD, Judge Smith cited 42 C.F.R. § 405.1062. *Id.* at 080.

On March 19, 2019, Dr. Maupin's Medicare Advantage plan (Kaiser) appealed Judge Smith's decision to, and requested review by, the Council. Doc. 20 at Exh. 1, 061. Kaiser contended that Judge Smith erred "based on an incorrect application to regulatory guidance." *Id.* at 063-064; *see also id.* at 034. In sum, Kaiser contended that because Kaiser was bound to follow the LCD at the initial and reconsideration stages of claim review, ALJ Smith should also be bound by the LCD and if ALJ Smith did not do so as well, that would "[c]reate an inconsistent application of the law as well as creating a lack of uniformity amongst enrollees[.]" *Id.* at 063-064. In short, Kaiser argued that because Kaiser was bound by the LCD, so was Judge Smith. *Id.*

---

[7] For these same reasons, the LCD subsequently was revised to explicitly extend coverage of TTFT for individuals diagnosed with a GBM. Indeed, during the period when the LCD was being revised (June 2018 through July 2019), because the LCD was inconsistent with the standard of care and had not kept pace with the clinical and scientific developments, the vast majority of Medicare ALJs declined to follow the LCD and ordered coverage of the life-saving treatment/device.

-7-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Importantly, Kaiser did not allege any other grounds for error in Judge Smith's decision. *See generally*, *id.* at 061-064.

In a May 2, 2019 decision, the Council reversed ALJ Smith and held the ALJs and MAC are bound by LCDs and have no discretion to depart from them. Doc. 20 at Exh. 1, at 033-038. The Council acknowledged that if Dr. Maupin was enrolled in Original Medicare, the ALJ and the Council would not be bound by the LCD. *Id.* at 035. Nevertheless, because Dr. Maupin was enrolled in a Medicare Advantage plan and because Kaiser purportedly was bound by the LCD at the initial claim review stages, the Council held that the ALJ and the Council were also bound by the LCD. *Id.* at 036. In particular, the Council held:

> Because an LCD is binding on MA Plans, we *must* apply the authorities that an MA Plan is required to apply. Thus, it is not appropriate to apply the substantial deference provisions of 42 C.F.R. § 405.1062(a) and (b), which permit an ALJ to depart from an LCD, in Medicare Part C.

*Id.* (emphasis added).

## II.   DISCUSSION

### A.   Neither the ALJ Nor Council Is Bound By LCDs in Part C Cases

As detailed above, under Original Medicare, neither ALJs nor the Council is bound by LCDs. *See* 42 U.S.C. § 1395ff(c)(3)(B)(ii)(III); 42 C.F.R. § 405.1062(a).

Further, appeals in Part C cases are guided by the regulations that apply to Original Medicare cases. *See* 42 C.F.R. §§ 422.562(d)(1) and 422.608. Thus, just as in Original Medicare appeals, neither the ALJ nor the Council is bound by LCDs in Part C (i.e., Medicare Advantage plan) cases. Accordingly, when the Council concluded that the ALJ and the Council were bound by the LCD because the Plan was, that was an error of law.

It is of little moment that a Plan may be bound by an LCD in making an initial determination on a claim. The same is true under Original Medicare. Pursuant to the statutes and regulations, after a claim is appealed to the QIC, an ALJ, or the Council

-8-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

under Original Medicare, those bodies have discretion to depart from an LCD. Likewise, in a Part C appeal, after a claim is appealed to the IRE, an ALJ, or the Council, those bodies have discretion to depart from an LCD.

Further, pursuant to 42 U.S.C. § 1395w-22(g)(5), enrollees in Part C plans are entitled to appeal hearings before the Secretary "to the same extent as provided in [Original Medicare]." One aspect of an Original Medicare appeal hearing is that the QIC, ALJs, and the Council are not bound by an LCD. Thus, to comply with § 1395w-22(g)(5), enrollees in Part C plans must be accorded appeals before ALJs and the Council where the ALJs and Council have discretion to depart from LCDs.

Accordingly, the Council's decision otherwise was in error and summary judgment in Dr. Maupin's favor is appropriate.

### B. Summary Judgment of Dr. Maupin's Claims Is Appropriate

Assuming the legal issue of whether the ALJ or Council are bound by LCDs in Part C cases is decided in Dr. Maupin's favor, then summary judgment of Dr. Maupin's claims is appropriate. As set forth in the Complaint, Counts I-V are essentially duplicative complaining that the Secretary has failed to follow the law and/or unlawfully withheld or unreasonably delayed Dr. Maupin's coverage. Thus, after the underlying legal issue of whether the ALJ or Council is bound by LCDs in Part C cases is decided, summary judgment of Counts I-V is appropriate.

Counts VI and VII would be rendered moot by a decision on any of Counts I-V.

### C. The ALJ's Decision Should Be Affirmed and Coverage Ordered

As noted above, Council review is limited to the issues raised in the request for review or referral. *See* 42 C.F.R. §§ 405.1112(c) and 405.1110(c)(1). In the present case, the only issue raised in Kaiser's request for review was Kaiser's contention that the ALJ was bound by the LCD. Thus, it would be improper for the Council to conduct a review of the ALJ's decision on any other basis and/or deny Dr. Maupin's claim on any other basis. Accordingly, because Kaiser's request for review was limited to that

-9-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

issue and that was wrong as a matter of law, the ALJ's decision granting coverage must be affirmed.

### III. CONCLUSION

For the reasons set forth above, Dr. Maupin's motion for summary judgment should be granted and the Secretary should be ordered to cover Dr. Maupin's claim.

Dated: October 18, 2019

REED SMITH LLP
 /s/ *Farah Tabibkhoei*
Farah Tabibkhoei

-and-

PARRISH LAW OFFICES

 /s/ *James S. Pistorino*
James C. Pistorino
*Counsel for Plaintiff Frederic Maupin*