Farah Tabibkhoei (SBN 266312)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Telephone: +1 213 457 8000
Facsimile: +1 213 457 8219
Email: FTabibkhoei@reedsmith.com

James C. Pistorino (SBN 226496)
PARRISH LAW OFFICES
224 Lexington Dr.
Menlo Park, CA 94025
Telephone: (412) 561-6250
Facsimile: (412) 561-6253
Email: james@dparrishlaw.com

Attorneys for Plaintiff Frederic Maupin

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDERIC MAUPIN, an individual,<br><br>Plaintiff,<br>v.<br>ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | Case No. 2:19-cv-05673-MWF-JPR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: December 2, 2019<br>Time: 10:00 a.m.<br>Place: First Street Courthouse<br>  350 West First Street,<br>  Courtroom 5A<br>  Los Angeles, California 90012 |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

US_ACTIVE-150087387.1

## I. INTRODUCTION

Plaintiff Dr. Frederic Maupin ("Dr. Maupin") files this Opposition to Defendant's ("the Secretary") motion for summary judgment as follows:

The Secretary's motion should be denied in its entirety. To pick an example, the Secretary's claims that Dr. Maupin seeks an "advisory opinion" (Cross-Motion ("Mot.") at 1:22) or that this case is moot (Mot. at 14:22) are utterly baseless. One clue that this case is not moot is the Secretary's failure to pay Dr. Maupin's claims that are the subject of this appeal. Another clue is that, *on its face*, the revised Local Coverage Determination ("LCD") the Secretary points to indicates that it only applies to "services performed on or after 09/01/19" (Ex. A at 4),[1] while the claim at issue in this case was for services performed in September-December 2018.

The rest of the Secretary's arguments fare no better.

At base, as set forth in Dr. Maupin's motion for summary judgment (*see* Dkt. #21), an administrative law judge "ALJ" determined that coverage of a TTFT device to treat Dr. Maupin's glioblastoma multiforme ("GBM"), an aggressive form of brain cancer, was appropriate. The Medicare Appeals Council ("Council") reversed the ALJ on the alleged legal grounds that ALJs and the Council are bound by LCDs *only* in Part C cases. That is wrong as a matter of law, is legally unsound, and is the reason for this case.

The Secretary's cross-motion does everything it can to avoid addressing that issue by focusing on the different question of whether Part C providers are bound by LCDs (which is not disputed or material).

The Secretary's motion should be denied.

---

[1] That is, nearly three months after this case was filed.

## II. BACKGROUND

### A. "Medicare Administrative Contractors" and "Medicare Appeals Council" Serve Separate Functions and the Standard of Review Differs

The names of two relevant entities are similar and can lead to confusion, especially as offered in the Secretary's cross-motion. At the lowest levels of dealing with coverage in Part A and B cases (*i.e.*, "Original Medicare") there are "Medicare Administrative Contractors" (referred to as "MACs" by the Secretary) (hereafter, "Contractors"). These Contractors are responsible for administering the Medicare program (including developing LCDs) and handling the initial levels of the claims process.

As laid out in Dr. Maupin's motion for summary judgment, after preliminary levels of appeals of denials, beneficiaries whose claims are still denied can appeal to an ALJ. If the claim is still denied, the beneficiary can appeal to the Council. Thus, Contractors develop LCDs (which they are then bound by) and denials then run through an appeal process that includes an ALJ hearing and ends with the Council. Under the statues and regulations, neither the ALJ nor the Council are bound by LCDs developed by the Contractors.

In a Part C plan, a "Medicare Advantage" (aka "Medicare+Choice") Plan plays the same role as the Contractor (though they cannot promulgate LCDs). The same appeal process is used, proceeding through an ALJ and culminating with an appeal to the Council. The gist of this case is the Secretary's new (unsupported) claim that ALJs and the Council are bound by LCDs in Part C cases only.[2]

---

[2] Dr. Maupin's counsel has been litigating matters related to Medicare coverage for more than 20 years. Until the last year, Dr. Maupin's counsel had never heard of such a claim by the Secretary though Dr. Maupin's counsel has handled hundreds of Part C appeals. The Secretary's new position seems to be something invented within the last year as a new basis to deny Part C claims. For this reason, Dr. Maupin's counsel has not been able to find a single reported case where such a claim was made by the Secretary.

To avoid any confusion, Dr. Maupin will continue to refer to the "Medicare Administrative Contractors" as the "Contractors" and the "Medicare Appeals Council" as the "Council."

### B. The LCD Challenge Process

The Secretary's motion conflates a challenge to the validity of a LCD (which is not at issue here) with the process of challenging a decision in an individual case, which is what Dr. Maupin seeks to do. To be clear, no claim in this case seeks to challenge the validity of a LCD, contrary to the Secretary's suggestion. Indeed, the process of challenging the validity of an LCD is not relevant to this case.[3] Once an LCD is promulgated by a Contractor, it guides initial consideration of a claim. However, once in the appeal process, the "Qualified Independent Contractor" (or "Independent Review Entity"), ALJ, and the Council are only required to give substantial deference to the LCD; they are not bound by it. Thus, a decision in an individual case not to apply the LCD does not invalidate the LCD. It merely means that the Qualified Independent Contractor ("QIC") (or IRE), ALJ, or Council exercised their discretion not to apply the LCD in that particular case. This is what happened in Dr. Maupin's case before the ALJ.

Separately, there is a process to challenge the validity of an LCD, the result of which can apply to across all cases. 42 U.S.C. § 1395ff(f)(2); 42 C.F.R. § 426.400-490. This is a bigger, more elaborate, and expensive process than simply challenging a denial based on an LCD in a particular case. While a beneficiary may choose to initiate an LCD validity challenge, there is no requirement that a beneficiary do so.

In the present case, Dr. Maupin did not initiate a LCD validity challenge (though another GBM patient did). Instead, Dr. Maupin simply appealed the denial of coverage in his case and the ALJ and MAC issued decisions that only apply to his case. No claim in this case seeks to challenge the validity of the LCD. Instead, this case seeks only to

---

[3] Indeed, the Secretary's counsel appears to be confused about the Secretary's own procedures.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
- 3 -

reverse the denial in Dr. Maupin's case based on the grounds that ALJs and the Council are bound by LCDs in Part C cases.

### III.     DISCUSSION

#### A. The Secretary Mischaracterizes the Standard of Review

The Secretary's comments regarding the standard of review are legally unsound. He contends:

> The Secretary must be accorded the broadest possible discretion in implementing the statutes and regulations and his interpretation may be set aside only if arbitrary, capricious, or manifestly contrary to applicable law.

*See* Mot. at 7:20-24 (*citing Heckler v. Campbell*, 461 U.S. 458 (1983) and *Chevron, U.S.A., Inc. v. Natural Resource Defense Council*, 467 U.S. 837 (1984)).  Simply put, that has *never* been the law in this country.

Pursuant to 42 U.S.C. § 405(g), factual conclusions of the Secretary (if supported by substantial evidence) are conclusive.  As to non-factual matters, those are reviewed under any standard available under the APA (legal error, arbitrary and capricious, etc.).

With regard to statutory/regulatory construction, the first step is to use all the traditional tools of construction in construing a provision. *See, e.g., SAS Inst., Inc. v. Iancu*, 138 S.Ct. 1348, 1358 (2018).  Only if after doing so, the Court is "unable to discern Congress' meaning" and the provision is ambiguous should the Court then consider whether *Chevron* deference should apply to any proposed construction. *Id.* at 1358.  Indeed, during 2018, the Supreme Court issued multiple decisions cautioning courts to take the first step of this analysis seriously.[4]

In the present case, there are no disputed issues of fact.  Instead, this case turns solely on an issue of law – *i.e.*, whether ALJs and the Council are bound by LCDs in Part C cases, though they are not in Original Medicare cases.

---

[4] *See, e.g., Periera v. Session*, 138 S.Ct. 2105, 2120-21 (2018); *Digital Realty Tr., Inc. v. Somers*, 138 S.Ct. 767, 778 (2018); *Wisconsin Cent. Ltd. v. United States*, 138 S.Ct. 2067, 2074 (2018).

## B. The Secretary's Decision Is Contrary to Law/Arbitrary and Capricious

As Dr. Maupin showed in his motion for summary judgment, Congress has dictated that participants in Part C "Medicare Advantage" Plans are entitled to hearings before the Secretary "to the same extent" as "Original Medicare" beneficiaries. *See* 42 U.S.C. § 1395w-22(g)(5). One aspect of hearings before the Secretary in Original Medicare cases is that ALJs and the Council are not bound by LCDs and have discretion to depart from them. Here, the ALJ exercised that discretion to depart from the LCD and ordered coverage. The Secretary's reversal premised on the idea that ALJs and the Council are bound by LCDs in Part C cases is contrary to law/arbitrary and capricious.

In his cross-motion, the Secretary presents a strawman argument concerning the Secretary's ability (through the Contractors) to promulgate LCDs. That is not at issue in this case. *See* Mot. at 8-10. What is at issue is whether ALJs or the Council are bound by LCDs in Part C cases.

The Secretary claims that applying the statutes and regulations that allow ALJs and the Council to depart from LCDs "would lead to more inconsistent case by case determinations at the discretion of ALJ's despite the existence of applicable LCDs of general application." *See* Mot. at 11:11-13. That position is wholly without merit. First, of course, it is undisputed that that is exactly what the statutes and regulations state with regard to Original Medicare cases. *See, e.g.*, 42 U.S.C. § 1395ff(c)(3)(B)(ii)(II) ("… shall not be binding on the qualified independent contractor in making a decision …"). What the Secretary contends is that some different standard applies to Part C cases, though no statute or regulation supports that claim and the statutes and regulations say otherwise. Indeed, if LCDs could not be applied flexibly, all the statutes/regulations related to appeals would be rendered superfluous/futile.

Second, the statutes and regulations state that the review of a claim on appeal is to be based on the administrative record in each claim and is conducted *de novo* by ALJs and the Council. *See* 42 C.F.R. § 405.1000(d) ("The ALJ or attorney adjudicator

conducts a de novo review and issues a decision based on the administrative record, including, for an ALJ, any hearing record."); 42 C.F.R. § 405.1108 ("… the [Council] will review the ALJ or attorney adjudicator's decision *de novo*."). Thus, because the record in one case is different than in another case, and each case may be considered by different ALJs and Council panels, decisions are likely to vary.[5] That is the scheme created by Congress which the Secretary pursues in Original Medicare cases. The Secretary's new effort to adopt a different approach in Part C cases that is not anchored in any law or regulation resulted in this case.

Respectfully, it is very difficult for Dr. Maupin to follow the Secretary's claims regarding deference. *See* Mot. at 11. As posited by the Secretary, the Council decision is entitled to deference. That is simply not the case. Outside the context of statutory/regulatory construction, the Secretary's legal conclusions are entitled to no deference. Even with respect to statutory/regulatory construction, the Secretary's legal conclusions are entitled to no deference if the statute/regulation is unambiguous, etc.[6] Here, the Secretary does not contend that any of the statutes/regulations are ambiguous. Thus, the Secretary is entitled to no deference of any kind.

The Secretary's decision is contrary to law/arbitrary and capricious.

### C. ALJs And The Council Are Not Bound By LCDs In Part C Cases

As shown in Dr. Maupin's motion, neither ALJs nor the Council are bound by LCDs in Part C cases. The Secretary's argument concerning the central issue in this case (*i.e.*, whether ALJs and the Council are bound by LCDs in Part C cases) spans little more than a single page of the Secretary's motion. Mot at. 12. There, the Secretary

---

[5] Indeed, the Secretary relies on these very provisions when he tries to explain different decisions for the same treatment/device to the same beneficiary. Thus, when the same beneficiary presents prior, favorable, ALJ decisions on the same treatment/device issued to the same beneficiary, the Secretary routinely ignores them and inconsistent decisions issue. *See, e.g., Bloom v. Burwell,* 16-cv-121 (D. Vermont) (Crawford, J.) (13 ALJ decisions on the same device to the same beneficiary, 9 favorable, 4 unfavorable).

[6] Dr. Maupin assumes that the Court is aware of the very substantial debate (even among members of the Supreme Court) as to the continued viability of *Chevron* deference.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
- 6 -

repeats the discredited claim that, because Medicare Advantage Plans are bound by LCDs at the initial review stage, ALJs and the Council are likewise bound. Again, as Dr. Maupin pointed out in his motion for summary judgment, Part C plan participants are entitled to hearings before the Secretary "to the same extent" as Original Medicare beneficiaries. One aspect of such hearings is that ALJs and the Council are not bound by LCDs and can order coverage even in the face of an applicable LCD. Medicare Advantage Plans are required to comply with ALJ and Council determinations regarding coverage, even if the Medicare Advantage Plan's determination differed.[7]

Like so many other claims by the Secretary, the Secretary provides zero legal basis for his claim that Part A and B regulations do not apply to Part C cases and that there is a "distinct appeals process" for Part C cases "as compared to Parts A and B." Mot. at 12-13. Indeed, the regulations explicitly provide otherwise. *See* 42 C.F.R. § 422.562(d)(1) ("When other regulations apply") which provides:

> Unless this subpart provides otherwise and subject to paragraph (d)(2) of this section, the regulations in part 405 [*i.e.*, those covering Original Medicare] of this chapter (concerning the administrative review and hearing processes and representation of parties under titles II and XVIII of the Act) apply under this subpart to the extent they are appropriate.

As noted, the regulations in part 405 specify that ALJs and the Council are not bound by LCDs. Thus, in addition to Congress' command, the Secretary's own regulations contradict the arguments being made by him in this case.

Pursuant to both Congress' command and the Secretary's own regulations, neither ALJs nor the Council are bound by LCDs in Part C cases.[8]

---

[7] *See, e.g.*, MEDICARE MANAGED CARE MANUAL, Chapter 13 ("Parts C & D Enrollee Grievances, Organization/Coverage Determinations, and Appeals Guidance"), Section 90 ("When a plan's decision is reversed in whole or in part by any other appeal entity, the plan must authorize or provide the service or benefits as expeditiously as the enrollee's health condition requires[.]"). Available at https://www.cms.gov/Medicare/Appeals-and-Grievances/MMCAG/index.html (last visited Nov. 8, 2019).

[8] Were it otherwise, that would be a profound disincentive for people to enroll in Medicare Advantage Plans because the scope of their coverage would be less than under Original Medicare. It

PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
- 7 -

### D. The Secretary's Arguments Regarding Jurisdiction and the Requested Relief Lack Merit

The Secretary presents three arguments related to jurisdiction and requested relief. None of them are meritorious.

### 1. This Court Can Order Coverage

The Secretary offers that this Court lacks jurisdiction to order coverage without remanding for further merits activity. *See* Mot. at 13:6. That is simply wrong.

Pursuant to 42 U.S.C. § 405(g) (fourth sentence):

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Secretary], with or without remanding the cause for a rehearing.

Thus, in a so-called "sentence four remand", the Court makes a final decision regarding coverage and then remands the matter to the Secretary with instruction to effectuate the Court's decision. By contrast, a "sentence six remand" remands the case to the Secretary for further substantive proceedings. "Sentence six remands" are only available on motion by the Secretary, and no such motion has been made in this case. Accordingly, pursuant to the statute enacted by Congress, this Court has the power to grant the relief requested.

Moreover, the Secretary's claim that "questions remaining have not been considered by the agency" (Mot. at 13:20-21) is also incorrect. As noted in Dr. Maupin's motion for summary judgment, Council review is limited to the issues raised in the request for review or referral. *See* 42 C.F.R. §§ 405.1112(c) and 405.1110(c)(1). Because Kaiser's request for review was limited to the issue of whether the ALJ was bound by the LCD, it would be improper for the Council to review or deny Dr. Maupin's

---

is noted that Congress and the Secretary encourage people to enroll in Medicare Advantage Plans because the additional coverage (and, therefore, better healthcare overall) leads to fewer claims on Original Medicare. Currently, approximately 1/3 of the Medicare eligible population is enrolled in some type of Medicare Advantage Plan.

claim on any other basis. Thus, there are no "questions remaining" and coverage should be ordered.

### 2. Dr. Maupin Does Not Seek Review of LCD Validity

The Secretary's argument that Counts I and IV seek and review of the validity of the LCD itself is off-base. *See* Mot. at 14. Based on this misapprehension, the Secretary alleges that this Court lacks the power to make such a determination. There is nothing to these arguments.

Dr. Maupin is not seeking a review of the validity of the LCD in this case. Instead, he only seeks review of the denial of his claim for coverage. Thus, Counts I and IV are focused on coverage for Dr. Maupin, not the validity of the LCD.

Indeed, the validity of the LCD was not even put at issue in this case. The ALJ assumed the LCD was valid. Nevertheless, the ALJ exercised his discretion and declined to apply it. Likewise, the Council assumed the LCD was valid but erroneously held that the ALJ and the Council were bound by it.

### 3. This Case Is Not Moot

The Secretary offers the novel claim that this case is moot. *See* Mot. at 14-15. Not so. Dr. Maupin's claim has not been paid and therefore cannot be moot. As noted above, Dr. Maupin submitted a claim for pre-approval for TTFT to treat his brain cancer during the months of September-December 2018. Though initially denied, ALJ Smith reversed them and ordered coverage. Thereafter, the Council reversed Judge Smith on the grounds that Judge Smith and the Council were bound by the LCD, though they would not have been in an Original Medicare case. As a result, Dr. Maupin's claim was not paid and this case seeks a reversal of the denial and an Order that the Secretary cover Dr. Maupin's claim. Until Dr. Maupin's claim is paid or, heaven forbid, this Court decides that he is not entitled to that relief, this case will not be moot.

The Secretary's claim that this case is moot because the LCD was later revised does not even withstand a moment of scrutiny. *On its face*, the revised LCD applies only to "services performed on or after 09/01/19" (Ex. A at 4), while the claim at issue

in this case was for services performed well before then.  Thus, the LCD revision simply has no bearing on this case.

The Secretary's reliance on *Habetler v. Burwell*, 667 Fed.Appx. 633 (9th Cir. 2016) is misplaced and does not support the Secretary's claims.  There, the plaintiff sought an injunction against *future* enforcement of an LCD that was retired while the case was pending.  As a result, "there [was] nothing left to enjoin." *Id*.  By contrast, in the present case, Dr. Maupin seeks no injunction against *future* enforcement of the LCD.  Instead, he only seeks relief for the *past* denial of his claim.  For all these reasons, the case is not moot.

## IV.     CONCLUSION

For the reasons set forth above, the Secretary's cross-motion should be denied, Dr. Maupin's motion for summary judgment should be granted, and the Secretary should be ordered to cover Dr. Maupin's claim.

Dated: November 8, 2019         REED SMITH LLP

  /s/ *Farah Tabibkhoei*_____
Farah Tabibkhoei

-and-

PARRISH LAW OFFICES

/s/ *James C. Pistorino*_____
James C. Pistorino
*Counsel for Plaintiff Frederic Maupin*