NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
PAUL B. GREEN (Cal. Bar No. 300847)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0805
    Facsimile: (213) 894-7819
    E-mail: Paul.Green@usdoj.gov

Attorneys for Defendant Alex Azar, Secretary,
United States Department of Health and Human Services

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FREDERIC MAUPIN, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>ALEX AZAR, in his official capacity as Secretary of the UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>    Defendant. | No. CV 19-5673-MWF (JPRx)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:  December 2, 2019<br>Hearing Time:  10:00 a.m.<br>Ctrm:  5A<br>Hon.  Michael W. Fitzgerald |

**TABLE OF CONTENTS**

DESCRIPTION                                                                                                   PAGE

TABLE OF AUTHORITIES ...................................................................................ii

I.    INTRODUCTION ........................................................................................1

II.   ARGUMENT................................................................................................1

    A.   The Standard Of Review On The Cross-Motion Is Whether The Secretary's Decision Was Arbitrary, Capricious, Or Contrary To Law. ....................................................................................................1

    B.   Relying On The TTFT LCD To Deny Dr. Maupin's Claim Was Not Arbitrary, Capricious, Or Contrary To Law......................................2

    C.   The TTFT LCD Was Binding On The ALJ And The Council. ....................4

        1.   History And Purpose: Medicare Advantage Was Created As An Alternative To Original Medicare....................................................4

        2.   Structure: Medicare Advantage And Original Medicare Are Separate Regulations.........................................................................5

        3.   Text: The Plain Language Of Medicare Advantage Shows That LCDs Are Binding On ALJs And The Council....................................5

    D.   The Court Should Not Make A Final Determination Of Coverage..............9

III.  CONCLUSION............................................................................................12

# TABLE OF AUTHORITIES

DESCRIPTION                                                                             PAGE

**Cases**

*Almy v. Sebelius*,
 679 F.3d 297 (4th Cir. 2012) ....................................................................................2

*Almy v. Sebelius*,
 749 F. Supp. 2d 315 (D. Md. 2010) ..........................................................................2

*Bodnar v. Sec'y of Health & Human Servs.*,
 903 F.2d 122 (2d Cir. 1990) ......................................................................................3

*Burns v. United States*,
 501 U.S. 129 (1991) ..................................................................................................6

*Caring Hearts Personal Home Servs., Inc. v. Burwell*,
 824 F.3d 968 (10th Cir. 2016) ................................................................................10

*Co. of Los Angeles v. Shalala*,
 192 F.3d 1005 (D.C. Cir. 1999) ..............................................................................10

*Fed. Power Comm'n v. Idaho Power Comm'n,*
 344 U.S. 17 (1952) ..................................................................................................10

*Finigan v. Burwell*,
 2016 WL 2930905 (D. Mass. May 19, 2016) .........................................................10

*Friedrich v. Sec'y of Health & Human Servs.*,
 894 F.2d 829 (6th Cir. 1990) ....................................................................................3

*Goodman v. Sullivan*,
 891 F.2d 449 (2d Cir. 1989) ......................................................................................3

*Heckler v. Campbell*,
 461 U.S. 458 (1983) ............................................................................................2, 4

*Heckler v. Ringer*,
 466 U.S. 602 (1984) ..................................................................................................2

*Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*,
   94 F. Supp. 3d 1285 (S.D. Fla. 2015) ................................................................. 4, 9

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ..................................................................................... 3, 4, 8

*Madsen v. Kaiser Found. Health Plan, Inc.*,
   2009 WL 1537878 (S.D. Cal. June 2, 2009) ............................................................ 7

*Parra v. PacifiCare of Arizona, Inc.*,
   715 F.3d 1146 (9th Cir. 2013) .................................................................................. 4

*Presbyterian Hosp. of Dallas v. Harris*,
   638 F.2d 1381 (5th Cir. 1981) ................................................................................ 10

*SAS Inst., Inc. v. Iancu*,
   138 S. Ct. 1348 (2018) .............................................................................................. 9

*Sec'y of Labor, U.S. Dep't of Labor v. Seward Ship's Drydock, Inc.*,
   937 F.3d 1301 (9th Cir. 2019) .................................................................................. 7

*Shalala v. Schaefer*,
   509 U.S. 292 (1993) ................................................................................................ 11

*Thomas Jefferson Univ. v. Shalala*,
   512 U.S. 504 (1994) .................................................................................................. 8

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
   570 U.S. 338 (2013) .................................................................................................. 6

*Whitcomb v. Burwell*,
   2015 WL 3397697 (E.D. Wis. May 26, 2015) ...................................................... 10

*Wilkins v. Sullivan*,
   889 F.2d 135 (7th Cir. 1989) .................................................................................... 3

**Statutes**

5 U.S.C. § 706 ..................................................................................................... 1

5 U.S.C. § 706(2)(A) ............................................................................................ 1

42 U.S.C. § 405(b) ............................................................................................... 7

42 U.S.C. § 405(g) ............................................................................... 10, 11, 12

42 U.S.C. § 1395w-22(g)(5) ............................................................................... 7

42 U.S.C. § 1395y(a)(1)(A) ........................................................................... 2, 11

42 U.S.C. §§ 1395 ............................................................................................... 4

**Regulations**

42 C.F.R. § 405 ................................................................................................ 5, 8

42 C.F.R. § 405.1062(a) ...................................................................................... 6

42 C.F.R. §§ 405.900 – 405.1140 ....................................................................... 5

42 C.F.R. § 405.1108 ......................................................................................... 11

42 C.F.R. § 405.968(b)(2) ................................................................................... 6

42 C.F.R. § 422 ................................................................................................ 5, 6

42 C.F.R. § 422.101(a) ........................................................................................ 9

42 C.F.R. § 422.101(b) ........................................................................................ 5

42 C.F.R. § 422.562(d)(1) ................................................................................... 8

42 C.F.R. § 422.608 ............................................................................................ 8

42 C.F.R. §§ 422.560 – 422.626 ......................................................................... 5

**Other Authorities**

Paul M. Ryther and Barbara Samuels,
  *Soc. Sec. Disab. Claims Prac. & Proc.* (2nd ed.) ........................................ 11

# THE SECRETARY'S REPLY MEMORANDUM

## I. INTRODUCTION

Dr. Maupin's Opposition (ECF No. 31) to the Secretary's Cross-Motion for Summary Judgment has not shown that the Council's decision to deny Dr. Maupin's request for pre-approval of TTFT based on the TTFT LCD was arbitrary, capricious, or contrary to law.[1] As many courts have held, the Secretary is entitled to rely, as he did here, on coverage guidelines as a means of resolving coverage disputes.

Summary judgment in favor of the Secretary is also warranted because Dr. Maupin's theory that the TTFT LCD was not binding on the ALJ and the Council is based on a strained, implausible reading of the text, structure, history, and purpose of the Medicare Advantage regulations. The tools of statutory and regulatory construction show that LCDs were meant to be binding on ALJs and the Council in Medicare Advantage coverage disputes, but not in Original Medicare coverage disputes. For these reasons, summary judgment should be entered in favor of the Secretary.

## II. ARGUMENT

### A. The Standard Of Review On The Cross-Motion Is Whether The Secretary's Decision Was Arbitrary, Capricious, Or Contrary To Law.

The Secretary's Cross-Motion requests that the Court affirm the Secretary's decision, made through the Council, denying Dr. Maupin's request for pre-approval of coverage of TTFT pursuant to the APA, 5 U.S.C. § 706. Under the APA, the Court must uphold the Secretary's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; [or] unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E). Dr. Maupin does not dispute that this standard applies, pointing to it in both his Complaint and Opposition. (Compl. at ¶¶ 51, 55; Opp'n at 4:14-15.)

---

[1] The Secretary adopts the defined terms in his Cross-Motion (ECF No. 29).

## B. Relying On The TTFT LCD To Deny Dr. Maupin's Claim Was Not Arbitrary, Capricious, Or Contrary To Law.

The Secretary's denial of Dr. Maupin's request for pre-approval of coverage based on the uniform application of the TTFT LCD was not arbitrary, capricious, or contrary to law.

As an initial matter, the Secretary's decision to rely on an LCD to deny Dr. Maupin's claim under 42 U.S.C. § 1395y(a)(1)(A) is afforded substantial deference. While Dr. Maupin questions *Heckler v. Campbell*, 461 U.S. 458 (1983), in light of recent Supreme Court statements about interpreting regulations, *Campbell* remains good law. *Campbell* stands for the proposition that the "Secretary's decision as to whether a particular medical service is 'reasonable and necessary' [under § 1395y(a)(1)(A)] and the means by which she implements her decision . . . are clearly discretionary decisions." *Heckler v. Ringer*, 466 U.S. 602, 617 (1984) (citing *Campbell*, 461 U.S. 458). This means that "as a general matter, the Secretary's formal case adjudications concerning Medicare payment and coverage, which involve an application and interpretation of the 'reasonable and necessary' provision in the Medicare Act, must be afforded substantial deference, absent a showing that they are arbitrary and capricious, or unsupported by substantial evidence." *Almy v. Sebelius*, 749 F. Supp. 2d 315, 324-25 (D. Md. 2010), on reconsideration (Oct. 29, 2010), aff'd, 679 F.3d 297 (4th Cir. 2012) (citation omitted). The Secretary is awarded this deference because "Congress has clearly left it to the discretion of the Secretary to decide how to deal with hundreds of millions of [] claims for coverage of thousands of devices every year." *Almy v. Sebelius*, 679 F.3d 297, 304 (4th Cir. 2012).

The Opposition misstates the Secretary's argument about the role of LCDs in resolving Medicare coverage disputes. (Opp'n at 5.) The Secretary does not argue that his ability to *promulgate* LCDs is at issue in this case. Rather, what is at issue is the Secretary's *reliance* on LCDs. Multiple cases have held that the Secretary's reliance, even "automatic reliance," on a coverage guideline in resolving a coverage dispute is not

2

arbitrary, capricious, or contrary to law. *Wilkins v. Sullivan*, 889 F.2d 135, 139 n.6 (7th Cir. 1989) (agency's "automatic reliance" on coverage guideline without providing individualized hearing was not arbitrary and capricious); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2413-14 (2019) (noting "Congress's frequent 'preference for resolving interpretive issues by uniform administrative decision, rather than piecemeal by litigation.' That preference may be strongest when the interpretive issue arises in the context of a 'complex and highly technical regulatory program.'") (citations omitted).

Dr. Maupin ignores this body of case law, which is fatal to his claims. Dr. Maupin also does not attempt to distinguish the remarkably similar facts of *Goodman v. Sullivan*, 891 F.2d 449 (2d Cir. 1989). In *Goodman*, the Second Circuit Court of Appeals upheld the denial of coverage for an MRI even though the Secretary extended coverage to MRIs as a general matter less than ten months after plaintiff had the MRI. *Id*. at 450. The court explained, "The prohibitory language of § 1395y(a)(1)(A), which bars benefits for services 'not reasonable and necessary' for diagnosis or treatment, is not reasonably interpreted as an affirmative mandate to extend coverage to all necessary services." *Id*.; *see also Bodnar v. Sec'y of Health & Human Servs.*, 903 F.2d 122, 125 (2d Cir. 1990) ("The Medicare statute unambiguously vests final authority in the Secretary, and no one else, to determine whether a service is reasonable and necessary[.]"); *Friedrich v. Sec'y of Health & Human Servs.*, 894 F.2d 829, 838 (6th Cir. 1990) ("There is no legitimate claim of entitlement to a given medical procedure just because a doctor prescribes it or a patient requests it.").

Here, Dr. Maupin asks the Court to reverse the Council's decision as arbitrary, capricious, and contrary to law, and issue an order finding that TTFT is medically "reasonable and necessary" to treat Dr. Maupin. (Compl. at ¶51.) While the Secretary certainly sympathizes with Dr. Maupin's serious medical condition, just as in *Goodman*, there is no "affirmative mandate to extend coverage to all necessary services." *Goodman*, 891 F.2d at 450. Kaiser denied Dr. Maupin's request for coverage as part of its uniform application of the TTFT LCD to avoid a discriminatory impact. CAR 783-

3

784, 034, 063; *see also Campbell*, 461 U.S. at 468 ("To require the Secretary to relitigate the [issue] at each hearing would hinder needlessly an already overburdened agency."). Therefore, the application of the TTFT LCD by the Council to deny Dr. Maupin's coverage request was not arbitrary, capricious, or contrary to law.

      **C.**    **The TTFT LCD Was Binding On The ALJ And The Council.**

Dr. Maupin's Opposition argues that, based on the traditional tools of statutory and regulatory construction, the administrative appeals process for Medicare Advantage (Part C) is the same as for Original Medicare (Parts A & B). However, a careful reading of the regulations reveals that Dr. Maupin's interpretation is an ends-driven analysis that does not account for the text, structure, history, and purpose of Medicare Advantage. *See Kisor*, 139 S. Ct. at 2415.

             1.    <u>History And Purpose: Medicare Advantage Was Created As An Alternative To Original Medicare.</u>

Congress established the Original Medicare program in 1965 to provide health benefits to people sixty-five years and older. 42 U.S.C. §§ 1395 *et seq*. In contrast, Medicare Advantage was created as an alternative to Original Medicare. Medicare "Part C allows eligible participants to opt out of traditional Medicare [i.e. Parts A and B] and instead obtain various benefits through [Medicare Advantage organizations.]" *Parra v. PacifiCare of Arizona, Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013). Medicare Advantage was enacted in 1986 and intended to "allow beneficiaries to have access to a wide array of private health plan choices in addition to traditional fee-for-service Medicare." *Id*. at 1152-53 (citation omitted). "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F. Supp. 3d 1285, 1289 (S.D. Fla. 2015), aff'd, 832 F.3d 1229 (11th Cir. 2016) (citing Gary Reed, *Medicare Advantage Misconceptions Abound*, 27 Health Law 1, 3 (2014)).

### 2. Structure: Medicare Advantage And Original Medicare Are Separate Regulations.

Consistent with this legislative history and purpose, Original Medicare and Medicare Advantage have distinct and separate regulations. Original Medicare is controlled by 42 C.F.R. § 405, entitled "Federal Health Insurance For The Aged And Disabled." The Original Medicare grievance process is found in 42 C.F.R. Subpart I. This series of regulations is titled, "Determinations, Redeterminations, Reconsiderations, and Appeals Under Original Medicare (Part A and Part B), and is found at 42 C.F.R. §§ 405.900 – 405.1140.

In contrast, Medicare Advantage is regulated by 42 C.F.R. § 422, entitled "Medicare Advantage Program." Most relevant here, 42 C.F.R. Subpart M contains the regulations for "Grievances, Organization Determinations and Appeals" for Medicare Advantage enrollees, described in a series of regulations at 42 C.F.R. §§ 422.560 – 422.626.

### 3. Text: The Plain Language Of Medicare Advantage Shows That LCDs Are Binding On ALJs And The Council.

Dr. Maupin's argument that the TTFT LCD was not binding ignores the plain language of Medicare Advantage and Original Medicare regulations.

42 C.F.R. § 422.101(b) provides that Medicare Advantage plans must comply with LCDs in making coverage determinations. Specifically, 42 C.F.R. § 422.101(b) provides that each Medicare Advantage plan:

> *must . . . [c]omply with* – (1) CMS's national coverage determinations;(2) General coverage guidelines included in original Medicare manuals and instructions unless superseded by regulations in this part or related instructions; and (3) *Written coverage decisions of local Medicare contractors with jurisdiction for claims in the geographic area in which services are covered under the MA plan.*

(emphasis added). Under this provision, LCDs are binding on Part C plans. Medicare

5

Advantage does not have any express exceptions to section 422.101(b).

In contrast, Original Medicare have regulations that expressly provide LCDs are not binding in the review of coverage determinations:

- 42 C.F.R. § 405.968(b)(2) provides, "QICs are not bound by LCDs, LMRPs, or CMS program guidance, such as program memoranda and manual instructions, but give substantial deference to these policies if they are applicable to a particular case.
- 42 C.F.R. § 405.1062(a) provides, "ALJs and attorney adjudicators and the Council are not bound by LCDs, LMRPs, or CMS program guidance, such as program memoranda and manual instructions, but will give substantial deference to these policies if they are applicable to a particular case."

Similar provisions do not exist in the Medicare Advantage regulations under 42 C.F.R. § 422. The exclusion of such provisions from the Medicare Advantage regulations demonstrates the intention that LCDs be binding on plans, ALJs, and the Council in coverage dispute involving Medicare Advantage.

In the face of the plain, controlling language of section 422, Dr. Maupin is left to argue that section 405.1062(a) should also apply to section 422. Dr. Maupin is effectively asking the Court to rewrite the Medicare Advantage regulations to allow Dr. Maupin to recover on his claim. To take such a step would be contrary to U.S. Supreme Court precedent on textual interpretation. *See*, *e.g.*, *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013) ("Given this clear language, it would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope."); *Burns v. United States*, 501 U.S. 129, 136 (1991) ("An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent.").

Dr. Maupin has two theories as to why the Court has the authority to rewrite the Medicare Advantage regulations. First, Dr. Maupin argues that because Medicare Advantage enrollees are entitled to hearings before the Secretary "to the same extent" as

6

Original Medicare beneficiaries, LCDs are somehow not binding on ALJs and the Council. Dr. Maupin's conclusion does not follow the premise. 42 U.S.C. § 1395w-22(g)(5) addresses the appeals process for Medicare coverage determinations. It does not address what impact LCDs have with respect to the decision making of ALJs and the Council. Section 1395w-22(g)(5) states:

> An enrollee with a Medicare+Choice plan of a Medicare+Choice organization under this part who is dissatisfied by reason of the enrollee's failure to receive any health service to which the enrollee believes the enrollee is entitled and at no greater charge than the enrollee believes the enrollee is required to pay is entitled, if the amount in controversy is $100 or more, *to a hearing before the Secretary to the same extent as is provided in section 405(b) of this title*, and in any such hearing the Secretary shall make the organization a party.

42 U.S.C. § 1395w-22(g)(5) (emphasis added). 42 U.S.C. § 405(b), in turn, addresses "Administrative determination of entitlement to benefits; findings of fact; hearings; investigations; evidentiary hearings in reconsiderations of disability benefit terminations; subsequent applications." 42 U.S.C. § 405(b) addresses the procedures and evidentiary standards for a hearing; it does not encompass the issue of whether LCDs should be binding on ALJs or the Council (an issue found in a separate regulation for Original Medicare).

Section 1395w-22(g)(5) is simply a provision that guarantees an enrollee challenging a coverage dispute an opportunity to present his or her arguments to an agency decision maker at an evidentiary hearing. *See Madsen v. Kaiser Found. Health Plan, Inc.*, 2009 WL 1537878, at *3 (S.D. Cal. June 2, 2009) (in Medicare Part C administrative appeal, "the enrollee may request a hearing before an ALJ.") (citing 42 U.S.C. § 1395w–22(g)(5)).[2]

---

[2] To the extent that Dr. Maupin's reading is considered plausible, then the regulation is ambiguous because it is susceptible to two plausible interpretations. In such case, the Secretary's interpretation is entitled to deference. *See Sec'y of Labor, U.S. Dep't of Labor v. Seward Ship's Drydock, Inc.*, 937 F.3d 1301, 1307 (9th Cir. 2019)

7

Dr. Maupin's second theory is that LCDs should not be binding in the Medicare Advantage administrative review process because it would be "appropriate" to adopt the approach taken by Original Medicare. (ECF No. 22-1 at 5-6, 8; Opp'n at 7.) To make this point, Dr. Maupin points to 42 C.F.R. § 422.562(d)(1) and 42 C.F.R. § 422.608:

- 42 C.F.R. § 422.562(d)(1) provides: "Unless this subpart provides otherwise and subject to paragraph (d)(2) of this section, the regulations in [42 C.F.R. § 405] (concerning the administrative review and hearing processes and representation of parties under titles II and XVIII of the Act) apply under this subpart *to the extent they are appropriate*." (emphasis added.)
- 42 C.F.R. § 422.608 provides: "The regulations under [42 C.F.R. § 405] regarding Council review apply to matters addressed by this subpart *to the extent that they are appropriate*, except as provided in § 422.562(d)(2)." (emphasis added.)

Neither provision addresses LCDs and whether they should be binding. Given that the language in Original Medicare regulations expressly states that LCDs are not binding on ALJs and the Council, excluding parallel provisions in the Medicare Advantage regulations is consistent with the intent that Medicare Advantage not utilize such provisions.

Furthermore, the regulations of section 405 only apply to section 422 "to the extent they are appropriate." Section 422 does not state when it is "appropriate" to apply any of the regulations from section 405. Any decision about if and when to do so should be left to the Secretary's discretion, not Dr. Maupin's. *See Kisor,* 139 S. Ct. at 2413 ("Agencies (unlike courts) have 'unique expertise,' often of a scientific or technical nature, relevant to applying a regulation 'to complex or changing circumstances.'") (citations omitted); *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("This

---

("[W]e presume that Congress intended for courts to defer to agencies when they interpret their own ambiguous rules . . . To determine whether a regulation's meaning is truly ambiguous, courts must carefully consider the text, structure, history, and purpose of a regulation.") (quoting *Kisor*, 139 S. Ct. at 2414).

8

broad deference is all the more warranted when, as here, the regulation concerns 'a complex and highly technical regulatory program,' in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.'").[3]

Dr. Maupin's Opposition also argues that it would be a disincentive for people to enroll in Medicare Advantage plans if the scope of the coverage of Medicare Advantage was less than under Original Medicare. (Opp'n at 7 n.8.) Dr. Maupin, however, is conflating benefits provided with the administrative review process. While 42 C.F.R. § 422.101(a) provides that a Medicare Part plan must offer its enrollees the same "basic benefits" as Original Medicare, it does not state that they are entitled to the same presumptions in the claims determination process.[4] Indeed, the administrative appeals process is time-consuming and costly, and Medicare Advantage was meant to be "more efficient and less expensive" than Original Medicare. *Humana Med. Plan, Inc.*, 94 F. Supp. 3d at 1289. Regardless, the issue of how to incentivize enrollment in Medicare Advantage should be not persuasive on the Court. As Dr. Maupin's own authority states, "policy considerations cannot create an ambiguity when the words on the page are clear." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1358 (2018).

### D. The Court Should Not Make A Final Determination Of Coverage.

In the Opposition, Dr. Maupin abandons much of the broad relief sought by the Complaint. The Opposition concedes that Dr. Maupin is not seeking to challenge the TTFT LCD itself, either in its present or prior form. (Opp'n at 9-10.) To the extent the Complaint is seeking to challenge the TTFT LCD or obtain a ruling on coverage after September 1, 2019, such relief is outside the Court's jurisdiction or moot for the reasons

---

[3] If the Court determines that the phrase—"to the extent they are appropriate"—is ambiguous and subject to varying interpretations, then the Secretary's interpretation would be entitled to deference, particularly here where the term "appropriate" is not defined and calls for a discretionary decision.

[4] Dr. Maupin's counsel's commentary based on his personal experience found in footnote 2 should not be given any weight because it is not relevant and is contrary to Local Civil Rule 7-6.

stated in the Secretary's Cross-Motion. (ECF No. 29 at 13-15.)

That leaves Dr. Maupin's argument that this Court has jurisdiction to enter an order in Dr. Maupin's favor entirely resolving his claims. This argument ignores applicable law and the scope of the Council's decision below. (Opp'n at 8-9.) The Cross-Motion points to case law, which the Opposition avoids, holding that even where an error of law has been corrected by a reviewing court, but remaining questions have not yet been considered by the agency, the appropriate action is to remand to the agency. (*See* Cross-Motion at 13 (citing *Presbyterian Hosp. of Dallas v. Harris*, 638 F.2d 1381, 1399 (5th Cir. 1981); *Fed. Power Comm'n v. Idaho Power Comm'n*, 344 U.S. 17, 20 (1952); *Co. of Los Angeles v. Shalala*, 192 F.3d 1005, 1023 (D.C. Cir. 1999)). Courts have repeatedly applied this rule in the context of Medicare claim appeals. *See Caring Hearts Personal Home Servs., Inc. v. Burwell*, 824 F.3d 968, 970, 977 (10th Cir. 2016) ("And Caring Hearts submits this means we should vacate the agency's decision, just as we would any other that rests on a mistake about applicable law. With this we agree."); *Whitcomb v. Burwell*, 2015 WL 3397697 (E.D. Wis. May 26, 2015) (issuing a "sentence four remand," "to permit the Secretary to assess th[e] case under the proper legal standard"); *Finigan v. Burwell*, 2016 WL 2930905 (D. Mass. May 19, 2016) (remanding case to the Secretary based on Council's error of law).

Dr. Maupin's Opposition introduces the concept of "sentence four remand" and "sentence six remand" with little explanation or supporting case law. Dr. Maupin again misstates the Secretary's argument, claiming that the Secretary is requesting sentence six remand rather than sentence four remand under 42 U.S.C. § 405(g). The Secretary's position is that if the Court rules that the TTFT LCD is not binding, a sentence four remand, not sentence six remand, would be appropriate for further administrative proceedings. Section 405(g) provides that with a sentence four remand, the district may enter "a judgment affirming, modifying, or reversing the decision . . . with or without

remanding the cause for a rehearing."[5] A sentence four remand constitutes a final judgment by the district court, thereby relinquishing jurisdiction of the case to the Secretary. *Shalala v. Schaefer*, 509 U.S. 292, 310 (1993). A sentence six remand is not applicable in this case because the Secretary already filed his answer (ECF No. 11). 42 U.S.C. § 405(g).

Even if the Court were to rule that the TTFT LCD was not binding on the Council, the case should be remanded to the Secretary to make a final determination of whether TTFT treatment for Dr. Maupin was medically "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A). The Council denied Dr. Maupin's claim by relying on the binding TTFT LCD. (CAR 036). The Council did not reach the ultimate question of whether TTFT for Dr. Maupin was medically "reasonable and necessary" under 42 U.S.C. § 1395y(a)(1)(A). Therefore, even if the Court determines that the TTFT LCD was not binding on the Council, the Court should order a "sentence four remand" to the Council for a determination to made on whether the TTFT is medically "reasonable and necessary" to treat Dr. Maupin based on the evidence about Dr. Maupin's claim. In making this assessment, the Council would review the ALJ's decision *de novo* (42 C.F.R. § 405.1108) and could conduct additional hearings (42 C.F.R. § 405.1108).

Even if the Council determines that TTFT was medically "reasonable and necessary" to treat Dr. Maupin, additional fact finding would be needed to determine the number of months of medical services that Dr. Maupin is seeking payment for. The Opposition asserts that Dr. Maupin's claim is "for services performed in September-December 2018." (Opp'n at 1:10-11.) But the testimony at the AJ hearing on January 29, 2019 showed that Dr. Maupin did not receive TTFT treatment in that time period and that he had not started TTFT treatment at the time of the hearing. (CAR 781:18-22) ("He

---

[5] *See also* Paul M. Ryther and Barbara Samuels, *Soc. Sec. Disab. Claims Prac. & Proc.* (2nd ed.), § 19:67 (Types of remand: Sentence four versus sentence six) ("Under sentence four of 42 USC § 405(g), a district court may remand to the Commissioner for further administrative proceedings in conjunction with judgment on the merits[.]") (available on Westlaw and citing cases).

11

is currently . . . waiting to start Optune[.]"); *but see* Dr. Maupin's Response to Defendant's Statement of Undisputed Facts (ECF No. 31-1), ¶ 13 (disputing when Dr. Maupin started receiving TTFT treatment, but failing to identify when coverage began). Therefore, further administrative proceedings will be necessary to determine precisely how many days of prior TTFT treatment for which Dr. Maupin would be entitled to receive payment.

### III. CONCLUSION

For these reasons and those in the Motion, the Court should grant summary judgment in favor of the Secretary and against Dr. Maupin. In the event that the Court finds that the TTFT LCD was not binding on the ALJ and the Council in reviewing Dr. Maupin's claim, the Court should remand the case for further proceedings pursuant to 42 U.S.C. § 405(g).

Dated: November 18, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

 */s/ Paul B. Green*
PAUL B. GREEN
Assistant United States Attorney

Attorneys for Defendant Alex Azar, Secretary, United States Department of Health and Human Services

12